Jeremy M. Delicino (9959)
Jon D. Williams (8318)
9 Exchange Place
Suite 600
Salt Lake City, Utah  84111
Telephone: (801) 746-1460
Fax: (801) 998-8099

Curtis Tuttle (#14817)
1496 S. 1500 E.
Bountiful, Ut 84010
Phone: (435) 253-0378
Email: ctuttle@cmtpllc.com

*Attorneys for Defendant Wade Lemon*

### IN THE UNITED STATED DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>WADE C. LEMON<br>KASEY A. YARDLEY<br><br>Defendants. | **REPLY TO GOVERNMENT'S SENTENCING  MEMORANDUM**<br><br>Case No. 4.22-cr-00122<br><br>Magistrate Judge Paul Kohler |

Roughly two months ago, the United States filed a sentencing memo asking this Court to impose a three-month prison sentence on Wade Lemon, a 63-year-old man with no criminal history and a lifetime of good deeds. Yesterday, the government filed an amended sentencing memorandum asking this Court to impose a nine-month prison sentence. No new investigation was initiated, no new allegations advanced, and no new facts found. For as much as the government's position has changed, however, one conclusion has not: a prison sentence for a misdemeanor conviction is as unnecessary now as it was two months ago. In addition, a sentence of incarceration frustrates, rather than furthers, the overarching aim of the Sentencing Reform Act: avoiding

1

unwarranted disparity.

    I.    **The Government's Recommendation Would Create Unwarranted Disparity Among Similarly Situated Defendants.**

It is well known that the principal goal of the Sentencing Reform Act, the statutory vehicle that produced the federal sentencing guidelines, was to eliminate unwarranted disparity. And for much of the guidelines' roughly four-decade history, practitioners and courts alike assessed arguments about disparity through incomplete data and educated guesswork. Unable to sift through thousands of presentence reports and reams of sentencing data themselves, prosecutors and defense attorneys often argued their respective positions through inferences and suppositions. But the Commission has sought to fill that information lacuna in recent years, developing an accessible database for public use. And the data available on the Commission's website confirms what supposition suggests, namely that sentences of incarceration under § 2Q2.1 are rare.

First, a primer. The United States Sentencing Commission maintains an Interactive Data Analyzer (IDA), which contains information on nearly every federal sentence imposed between 2015 and 2023. Rather than simply inundate users with an unwieldy dataset that encompasses every offense, however, the IDA allows users to apply filters to narrow the datasets users seek to review. For example, users can filter by the specific guideline used in other cases, the criminal history category of offenders, or the sentencing zone. Users can also combine filters to narrow their search in more minute detail. Because the guideline applicable here, § 2Q2.1, is relatively rare, counsel looked to the data compiled by the Commission to assess how frequently courts imposed sentences of incarceration in cases where that guideline applied.

    A.    **Even Without Filtering for Age, Criminal History, or Sentencing Zone, Incarceration Was Infrequently Imposed.**

Without applying any filters to narrow the results, the IDA shows that there were 757 defendants sentenced under the § 2Q2.1 guideline. Of those defendants, 525 (or 69.4%) received no sentences of incarceration. Thus, the median sentence for all defendants sentenced under § 2Q2.1 from 2015 to 2023 was *zero* months. Even among the roughly 30% of offenders who received a sentence of incarceration, the median sentence was six months. Because no filters were applied, this dataset includes offenders with criminal history scores in every criminal history category—not just those, like Lemon, who have no criminal history. Even including every criminal history category, incarceration was rare. And even when it was imposed, the median sentence was lower

2

than what the government is recommending here.

In considering this dataset, it is critical to note that there is no way to limit the search to offenders convicted only of misdemeanors. In other words, every offender—whether convicted of felonies or misdemeanors—is included in the total. It is reasonable to assume that courts impose harsher penalties on felonies than misdemeanors, which would support the commonsense position that misdemeanants receive sentences of incarceration at even lower rates (if at all).

### B.     Accounting for Only Defendants in Zones A & B, Incarceration Was Exceedingly Rare.

As noted above, the larger dataset of 757 defendants included defendants in every criminal history category and offense level. When controlling for defendants who are in Zones A & B,[1] there were 437 defendants sentenced under § 2Q2.1. Of those defendants, only 76 (17.4%) received a sentence of incarceration. And among that small percentage, the median sentence imposed was two months. Again, these figures include the sentences received for felonies and misdemeanors.

### C.     Only Four Defendants in the Tenth Circuit Received Sentences of Incarceration Between 2015 and 2023.

Although it is a limited dataset, filtering the results for sentences imposed in the Tenth Circuit reveals that only four of the 25 defendants sentenced under § 2Q2.1 (16%) received sentences of incarceration. And the median sentence for those four defendants was four months of custody, substantially lower than the government's recommendation for a misdemeanor conviction here.

When one only includes defendants in the Tenth Circuit whose guideline ranges were in Zones A & B, there were 15 total defendants. Of those, only two (13.3%) received custodial sentences.

### D.     Controlling for Lemon's Age, Criminal History, and Sentencing Zone Show Just How Rare Incarceration is Under § 2Q2.1.

In addition to filtering for criminal history and the sentencing zone, the IDA also allows users to control for a defendant's age. Because age has long been correlated with the reduced risk of recidivism, counsel used the IDA to control for offenders over the age of 60 who, like Lemon, are in criminal history category I and Zones A

---

[1] Lemon asserts that his guideline range is in Zone A. Because his PSR lists Lemon's range in Zone B, he has included both Zones in the discussion.

or B. Of the 757 defendants sentenced under § 2Q2.1 from 2015 to 2023, there were 68 defendants who matched those characteristics. A total of 8 (11.8%) received sentences of incarceration, and the median sentence imposed was two months. Once again, it is unclear how many of those sentenced to incarceration were convicted of felonies.

The data above shouldn't come as a surprise—courts are duty-bound to impose sentences that are "sufficient, but not greater than necessary"[2] to achieve the purposes of the Sentencing Reform Act. And a key provision of the SRA is the congressional command that the "Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense."[3] Where, as here, a non-violent, 63-year-old first-time offender is convicted of a misdemeanor, it would create unwarranted disparity to impose imprisonment when such a sentence is rare even for those convicted of felonies.

Ultimately, rote reliance on a guideline range here offers a false precision, creating disparity that the guidelines were intended to guard against. Just as numbers cannot replace narratives and ranges can never substitute for reasons, the government's recommendation cannot be reconciled with the statutory purposes of sentencing. Far from satisfying the requirements of § 3553(a), the government's recommendation invites the very mischief the SRA was meant to curtail—unwarranted disparity among like offenders. The data confirm what commonsense counsels: a sentence of incarceration for a first-time offender convicted of a misdemeanor is unnecessary to satisfy the purposes of sentencing.

## II. Lemon's Good Works Merit a Downward Departure or Variance.

In its amended sentencing memo, the United States does not dispute Lemon's good works. Indeed, the government concedes that the letters submitted on Lemon's behalf "portray a man who is active in his community and supportive of his church and of the local youth in the community."[4] And it further concedes

---

[2] This statutory command is commonly known as the parsimony principle.

[3] 28 U.S.C. § 994(j).

[4] Government's Amended Sentencing Memo at 12.

that the letters "indicate [Lemon] is very generous with everyone in need."[5] But after recognizing Lemon's good works, the government blithely asserts that "Wade Lemon is able to be generous and community oriented because of the crimes he committed."[6] With all due respect, the government's assertion is pure poppycock.

To be sure, some of the letters reference Lemon's charitable contributions. And perhaps, in the government's telling, Lemon's business practices produced enough money to permit him to be charitable financially. But the government's myopic view conveniently ignores the non-monetary commitment to others consistently displayed by Wade Lemon. As the letters attest, Wade has been instrumental in helping young men overcome addiction. He has helped others not because he led hunts throughout the years that gave him some material comfort, but because he long ago decided to dedicate his life to others. The letters don't simply talk about donations of money—they discuss donations much greater and unquantifiable. As Kellie Christensen writes:

> For the past decade, Wade has selflessly dedicated his time and expertise to our program at Mountain Valley Recovery. As owners, my partner Judd and I have witnessed firsthand the positive impact Wade has had on the lives of our clients. … Wade has been instrumental in teaching our clients various work skills, instilling in them the value of service, and nurturing the ability to build meaningful relationships. His contributions extend beyond mere instruction; he has cultivated an environment where individuals in recovery can learn communication skills, find joy in sobriety, and rediscover a sense of belonging. … Despite the absence of financial incentives, Wade's dedication remains unwavering, driven solely by his compassion and desire to make a positive impact.[7]

Lest this Court think that the letter is an outlier and be inclined to adopt the government's mischaracterization, there's more. Austin Pederson, the director of Chateau Health & Wellness, echoes the comments offered in Mrs. Christensen's letter, noting:

> Wade has touched the lives of countless individuals across the country who are struggling with mental health and addiction. His dedication, compassion, and unwavering commitment to helping others overcome their struggles have made him a beacon of hope in the field of addiction treatment.[8]

Rather than address the sentiments expressed in these letters and others still, the government resorts to conjecture to oppose a departure for Wade's good works. It notes that investigators "looked into two hunts and both were canned, which bodes [sic] the question, just how long has Wade Lemon been violating the law?" Set

---

[5] *Id.*
[6] *Id.*
[7] *See* Doc. 100-1 at 4 (Letter of Kellie Christensen).
[8] *Id.* at 10 (Letter of Austin Pederson).

5

aside the guesswork of the government's query. Set aside, too, the invitation to speculation. The government fails to mention its placement of a tracking device on Wade's vehicle for two years—yes, years—aimed at uncovering illegal acts. What resulted from the illegal tracking, one might ask? Nary a criminal case—not one. But this Court need not travel down the channels of conjecture charted by the government. The government's opposition to a departure for Wade's good works is grounded neither in facts nor in law. Because of Wade's dedication to others and his countless good selfless deeds, a departure or variance is warranted. Indeed, courts have long recognized that a defendant's charitable and benevolent acts provide a basis for a sentence reduction. *See United States v. Adelson*, 441 F. Supp. 2d 506, 512-15 (S.D.N.Y 2006) (sentencing defendant to three-and-a-half years in prison where guidelines recommend life imprisonment, noting that "if ever a man is to receive credit for the good he has done … it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, '"the history and characteristics of the defendant."'); *United States v. Cooper*, 394 F.3d 172, 177-78 (3d Cir. 2005) (affirming below-Guidelines sentence of probation and six months' house arrest where defendant's acts of charity were "hands-on" efforts that had "a dramatic and positive impact on the lives of others."); *United States v. Tomko*, 562 F.3d 558, 571-75 (3d Cir. 2009) (affirming sentence of home confinement on the basis of many letters demonstrating pre-indictment charitable acts that involved not only money buy "personal time" by the defendant).[9]

## CONCLUSION

Wade Lemon, a devoted family man whose hardscrabble beginnings paved the path to his later success, has committed himself to others. He, like everyone sentenced in federal court, must pay for his transgressions. But the price this Court levies must measure his deeds as well as his misdeeds, accounting for the life he's led and

---

[9] *See also United States v. Prosperi*, 686 F.3d 32, 34, 40, 50 (1st Cir. 2012) (affirming district court's seven-year downward variance in sentencing defendant to six months' home confinement in $5 million fraud case based on defendant's charitable works and care for family); *United States v. Warner*, 792 F.3d 847, 850 (7th Cir. 2015) (affirming sentence of probation in $5.6 million tax evasion case where district court found the defendant's charitable works and generosity were genuine and "went further than simply donating").

the profound impact on others he's had. No sentence of incarceration is necessary to punish Wade, a 63-year-old man with no criminal history but a history of benevolent and selfless acts, for his misdemeanor offense.

DATED this 16th day of July, 2024.

                                                */s/ Jeremy Delecino*
                                                Jon Williams
                                                Curtis Tuttle
                                                Attorneys for Defendant Wade Lemon

## Certificate of Service

  I hereby certify that, on July 16, 2024, the foregoing is being electronically served on this day on the following attorneys of record via CM/ECF delivery system:

  AUSA Ruth Hackford-Peer

  SAUSA Benjamin Willoughby

                 /s/ Curtis M. Tuttle